# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SATÉLITES MEXICANOS, S.A. DE C.V. *et al.*,[1] | Case Nos. 11-[_____] (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' APPLICATION FOR FINAL ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014 AND 2016, AND DEL. BANKR. L.R. 2014-1 AUTHORIZING EMPLOYMENT AND RETENTION OF LAZARD FRERES & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

The above captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this application (the "**Application**") for entry of an order in the form attached hereto (the "**Order**"), pursuant to sections 327(a) and 328(a) of 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("**Local Rules**"), authorizing the retention and employment of Lazard Frères & Co. LLC ("**Lazard**"), as investment banker and financial advisor to the Debtors *nunc pro tunc* to the Petition Date (as defined below), and waiving certain informational requirements pursuant to Rule 2016-2(g) of the Local Rules. In support of this Application, the Debtors rely upon the Declaration of J. Blake O'Dowd, a Managing Director of Lazard (the "**Declaration**"), which is attached hereto as **Exhibit A**. In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Satélites Mexicanos, S.A. de C.V. (0653); Alterna'TV Corporation (2940); and Alterna'TV International Corporation (4784).

## Status of the Case and Jurisdiction

1. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested herein are sections 327, 328, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016, 5002 and Local Rules 2014-1 and 2016-2(g).

## Background

6. The Debtors are significant providers of fixed satellite services ("**FSS**") in the Americas, with coverage to more than 90% of the population of the Americas, including more than 45 nations and territories. As one of only two privately-managed FSS providers based in Latin America, the Debtors have designed, procured, launched, and operated three generations of satellites during a period of more than 25 years. Their current fleet is comprised of three satellites in highly attractive, contiguous orbital slots, which enables the Debtors' customers to effectively serve the entire coverage footprint utilizing a single satellite connection. The Debtors also provide Latin American television programming to the United States. The Debtors' industry

is highly regulated and the Debtors are dependent upon certain telecommunication concessions from the Mexican government.

7. As of the Petition Date, the Debtors' outstanding secured indebtedness consisted of approximately $238.2 million in aggregate outstanding principal amount of First Priority Notes[2] and $201.9 million in aggregate outstanding principal amount of Second Priority Notes, each issued by Satelites Mexicanos, S.A. de C.V. ("**SatMex**"). Each of the First Priority Notes and the Second Priority Notes are guaranteed by substantially all of the assets of Alterna'TV and Alterna'TV International (and certain non-debtor affiliates), and secured by a lien on substantially all of the assets of the Debtors. The relative rights of the holders of First Priority Notes and holders of Second Priority Notes are governed by the Intercreditor Agreement dated as of November 30, 2006. The Debtors also have certain unsecured debt on which they are generally current as of the Petition Date.

8. With the assistance of Lazard and Counsel, over approximately the past nine months, the Debtors negotiated a prepackaged plan of reorganization that involves raising approximately $325 million of new financing through a high-yield secured debt issuance and $96.25 million of new equity securities through a Rights Offering for direct and indirect equity in Reorganized SatMex. The Debtors successfully obtained prepetition commitments for both sources of funding, subject to certain conditions. The funds raised from the debt and equity issuances will be used to retire the First Priority Notes, fund the completion of replacement satellite(s), and provide working capital for the reorganized Debtors. In full satisfaction of their claims, the holders of Second Priority Notes will receive direct or indirect equity in Reorganized

---

[2] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the *Declaration of Patricio E. Northland in Support of Debtors' Chapter 11 Petitions and Request for First Day Relief*, which is being filed contemporaneously with this Motion (the "**Northland Declaration**"). Please see the Plan and Disclosure Statement for more details regarding the Plan and the transactions contemplated therein.

SatMex, and the option to participate in the Rights Offering. As an alternative, the holders of Second Priority Notes may elect to receive cash only under a liquidity option, where the holder will receive 38 percent of the principal amount of its Second Priority Note Claim (including PIK interest payments accrued by the earlier of the Effective Date or May 31, 2011). The Debtors anticipate paying all other claims in the ordinary course.

9. SatMex currently has two classes and three series of common stock, all of which is currently held by two Mexican trusts (collectively, the "**Trusts**"). The trust structure is not uncommon in Mexico and generally allows for foreign investors to invest in Mexican businesses and still meet Mexico's restrictions on foreign investment. Alterna'TV and Alterna'TV International are both wholly-owned subsidiaries of SatMex.

10. In order to effectuate the transactions under the Plan, Holdsat Mexico S.A.P.I. de C.V. ("**Mexico Holdings**") and SatMex International B.V. ("**Satmex B.V.**"), a wholly-owned subsidiary of SatMex Investment Holdings GP Ltd. and SatMex Investment Holdings L.P. (collectively, "**Investment Holdings**"), will purchase 100% of the current equity in SatMex for a purchase price of up to $6.25 million (subject to the satisfaction of certain conditions), pursuant to the Share Purchase Agreement dated December 22, 2010 (as amended, the "**Share Purchase Agreement**"). The beneficial owners of the purchasers under the Share Purchase Agreement are certain holders of Second Priority Notes. The purchase price for the equity will be funded in part by the proceeds of the Rights Offering, and the share purchase transaction will close before the Plan goes effective. Alterna'TV and Alterna'TV International will both remain wholly-owned subsidiaries of SatMex after confirmation of the Plan.

11. Holders of Second Priority Notes representing more than 66-2/3% of the outstanding principal amount of Second Priority Notes entered into a Restructuring Support

Agreement with the Debtors on December 22, 2010 (the "**SPN Restructuring Support Agreement**"). Holders of First Priority Notes representing more than 66-2/3% of the outstanding principal amount of First Priority Notes entered into a Restructuring Support Agreement with the Debtors on March 23, 2011 (the "**FPN Restructuring Support Agreement**," together with the SPN Restructuring Support Agreement, the "**Restructuring Support Agreements**"). Also, on January 13, 2011, certain beneficial holders of units representing in the aggregate a majority of the trust interests in one of the Trusts (collectively, the "**Supporting Unitholders**") entered into agreements (collectively, the "**Unitholder Support Letters**") undertaking to support the transactions described in the SPN Restructuring Support Agreement.

12.     On March 8, 2011, the Debtors served the Disclosure Statement and solicited votes from the First Priority Noteholders and Second Priority Noteholders. On March 25, 2011, the Debtors served the Supplement to the Disclosure Statement to announce their entry into the FPN Restructuring Support Agreement. The Chapter 11 Cases are required to implement the restructuring because the Second Priority Noteholders are impaired under the Plan. The Debtors believe that the Plan provides First Priority Noteholders with all amounts due to them under the First Priority Indenture. The Debtors have elected to treat First Priority Noteholders as an unimpaired class that is conclusively presumed to have accepted the Plan. However, in order to facilitate the confirmation and consummation of the Plan and to avoid any doubt that the proposed treatment leaves the First Priority Noteholders unimpaired or is otherwise acceptable to them, the Debtors are soliciting votes from the First Priority Noteholders. The Debtors believe that the Plan, which has been negotiated with representatives of the First Priority Noteholders, Second Priority Noteholders, the Series B Directors of SatMex, and certain equity holders of

SatMex is the best mechanism for ensuring a successful restructuring of their current debts and providing them with the liquidity to succeed in the long-term.

13.     Both the First Priority Noteholder and Second Priority Noteholder classes have voted to accept the Plan under the standards of 11 U.S.C. § 1126.  The Debtors have requested that the Court confirm their "prepackaged" Plan approximately one month from the Petition Date.

14.     A more detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is fully set forth in the Northland Declaration, filed contemporaneously herewith and incorporated herein by reference a detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these cases, is more fully set forth in the *Declaration of Patricio E. Northland in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed on the Petition Date and incorporated herein by reference.

## Relief Requested

15.     By this Application, the Debtors seek entry of a final order authorizing the employment and retention of Lazard as the Debtors' investment banker and financial advisor, *nunc pro tunc* to the Petition Date, and waiver of the informational requirements pursuant to Local Rule 2016-2(g), in accordance with the provisions of this Application, the Engagement Letter (as defined herein), the Indemnification Letter (as defined herein), and the Proposed Order submitted herewith.

## Basis for Relief

16.     Lazard's services will be rendered upon the terms and conditions of an engagement letter dated as of June 3, 2010, by and between Lazard and the Debtor Satelites Mexicanos, S.A. de C.V., on behalf of itself and its controlled subsidiaries, including the other Debtors (the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit B**, and that certain letter regarding indemnification and related matters, dated as of June 3, 2010, by and between Lazard and SatMex, on behalf of itself and its controlled subsidiaries, including the other Debtors, a copy of which is attached to the Engagement Letter as Addendum A (the "**Indemnification Letter**" and together with the Engagement Letter, the "**Lazard Agreement**").

17.     Lazard is an investment banking and financial advisory firm focused on providing investment banking, financial advice, and transaction execution on behalf of its clients.  Lazard's broad range of corporate advisory services includes general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatizations, special committee assignments, takeover defenses, and strategic partnerships/joint ventures.  In addition, Lazard has a significant asset management subsidiary.  Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority, as well as in all 50 states, the District of Columbia, and Puerto Rico.

18.     The Debtors have selected Lazard as its investment banker and financial advisor based upon, among other things, (a) the Debtors need to retain an investment banking and financial advisory firm to provide advice with respect to the Debtors' restructuring activities and (b) Lazard's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex Chapter 11 Cases.  Further, as this is a prepackaged bankruptcy proceeding, Lazard has already expended significant time, effort and resources in

preparing the cases, assisting in structuring the transactions that are the basis of the prepackaged plan, and negotiating the complex financial terms and related documents with multiple parties in interest. Indeed, since June, 2010, Lazard has advised the Debtors and has developed significant relevant experience and expertise regarding the Debtors and their current situation, and is thus well qualified and uniquely suited to deal effectively and efficiently with any financial problems that may arise during the pendency of these cases.

19.     Lazard has extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in Chapter 11 Cases. Lazard's employees have advised debtors, creditors, equity constituencies, and government agencies in numerous complex financial reorganizations. Indeed, since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1,000 billion in debtors' assets.

20.     Notably, Lazard has been retained as an investment banker and financial advisor in numerous large and complex Chapter 11 Cases, including, among other things, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Dec. 17, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (Bankr. D. Del. May 30, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D. Del. Apr. 5, 2007); *In re Northwest Airlines, Inc.*, Case No. 05-17930 (Bankr. S.D.N.Y. July 20, 2006); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006); *In re Collins & Aikman Corp.*, Case No. 05-55927 (Bankr. E.D. Mich. July 18, 2005); *In re Tower Automotive, Inc.*, Case No. 05-10578 (Bankr. S.D.N.Y. June 15, 2005); *In re Adelphia Comm. Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. Dec. 12, 2003); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. Jan. 14, 2003); *In re Metrocall, Inc.*, Case No. 02-11579 (Bankr. D. Del. July 8, 2002); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (Bankr. D. Del. March 19, 2002); *In re Hayes Lemmerz Int'l, Inc.*, Case No. 01-11490

(Bankr. D. Del. Feb. 14, 2002); *In re Exodus Comm'ns Inc.*, Case No. 01-10539 (Bankr. D. Del. Dec. 6, 2001); *In re Vlasic Foods Int'l, Inc.*, Case No. 01-00285 (Bankr. D. Del. Mar. 14, 2001); *In re Owens Corning Corp.*, Case No. 00-03837 (Bankr. D. Del. Nov. 30, 2000).

21.     The resources, capabilities and experience of Lazard in advising debtors is crucial to a debtor during its chapter 11 case. An experienced investment banker and financial advisor such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Lazard will concentrate its efforts on the restructuring, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to finalize and implement their prepackaged Chapter 11 plan. For these reasons, the Debtors require the services of a capable and experienced investment banking and financial advisory firm such as Lazard.

22.     The Debtors request approval of the employment of Lazard *nunc pro tunc* to the Petition Date. Such relief is warranted by the circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity, compressed timing and intense activity relating to the solicitation, preparation and filing of these prepackaged Chapter 11 Cases necessitated that the Debtors, Lazard, as well as the Debtors' other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of the Debtors to comply with the pending submission and approval of this Application.

## **Retention of Alfaro, Davila y Rios, S.C.**

23.     Due to the cross-border nature of the business and operations of the Debtors, the Debtors have required and utilized investment banking and financial advisory services in both the United States as well as Latin America prior to the commencement of these proceedings and

in connection with the proposed restructuring. Specifically, although Lazard has led and will continue to lead these services with respect to any restructuring services, the Debtors, by separate application, are seeking to retain the firm of Alfaro, Davila y Rios, S.C. ("**ADR**"), a Lazard strategic partner in Mexico, with respect to the Latin American aspects of these proceedings and the restructuring of the Debtors. As described further below, Lazard's retention is separate and apart from and not contingent upon the retention of ADR. Lazard will work with and coordinate its services with ADR to ensure that there are no duplication of services.

### Services To Be Rendered by Lazard

24.     The terms and conditions of Lazard's engagement are governed by the Lazard Agreement, which reflects the substantial efforts that will be required of Lazard in this engagement. Pursuant to the terms of the Engagement Letter, Lazard will advise the Debtors in a variety of matters, including, as reasonably requested:[3]

    a. Reviewing and analyzing the Debtors' business, operations and financial projections;

    b. Evaluating the Debtors' potential debt capacity and capital expenditure requirements in light of its projected cash flows;

    c. Assisting in the determination of a capital structure for the Debtors;

    d. Assisting in the determination of a range of values for the Debtors on a going concern basis;

    e. Advising the Debtors on tactics and strategies for negotiating with the Stakeholders;

    f. Rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

    g. Advising the Debtors on the timing, nature, and terms of new securities, and other consideration of other inducements to be offered pursuant to any Restructuring;

---

[3] The summaries of the Lazard Agreement contained herein are solely for the convenience of the Court and parties in interest. To the extent that such summaries and the terms of the Lazard Agreement are inconsistent, the terms of the Lazard Agreement shall control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Lazard Agreement.

h. Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring;

i. Assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of any such Sale Transaction[4];

j. Attending meetings of the Board of Directors of Satmex with respect to matters on which Lazard has been engaged to advise;

k. Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise in any proceeding before the Bankruptcy Court;

l. Provide input on the appropriate compensation and incentives for management and key personnel as requested by the Debtors;

m. Make an initial restructuring proposal to the Debtors and their Stakeholders within sixty (60) days of the date of the Lazard Agreement;

n. Advising with regard to possible affiliations with strategic operators;

o. Advising with regard to divestitures of non-strategic assets; and

p. Providing the Debtors with other financial restructuring advice.

25.     The Debtors believe that Lazard is well qualified and able to provide the foregoing services to the Debtors. Lazard has indicated a willingness to act on behalf of Debtors, on the terms described herein.

### Professional Compensation

26.     Lazard's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be

---

[4] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which all or substantially all of the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding economic interests in the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); or (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of material assets, securities or other interests of the Company (except as may occur with current Stakeholders as a result of a Restructuring) or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of a controlling interest in the Company to a third party.

compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

27. By this Application, the Debtors request that the Court approve the compensation arrangements described in the Lazard Agreement pursuant to section 328(a) of the Bankruptcy Code. The compensation arrangements contained in the Lazard Agreement are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for Lazard to act expeditiously and prudently with respect to the matters for which it will be employed.

28. Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Engagement Letter (the "**Fee Structure**"). Further, because the Debtors are seeking to retain Lazard under Bankruptcy Code section 328(a), the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" or fee enhancement under applicable law.

29. Subject to Paragraph 30 below with respect to the compensation of ADR, the Fee Structure is as follows:

  a. A monthly fee (the "**Monthly Fee**") of $175,000 for the first two months of Lazard's engagement, and $150,000 for each additional month of engagement, payable on execution of the Lazard Agreement and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10 of the Lazard Agreement. All Monthly Fees paid in respect of any months following the sixth month of the engagement shall be credited (without duplication) against any Restructuring Fee or Restructuring Sale Transaction (each as defined by the Engagement Letter) payable; provided, that, such credit shall not, in the aggregate, exceed $2 million; provided, further, that in the event of a

bankruptcy filing, such credit shall only apply to the extent that such fees are approved substantially in their entirety by the Bankruptcy Court, if applicable.

b.  A fee equal to $2 million (an **"Initial Restructuring Fee"**), payable upon the earlier (i) execution of a binding term sheet by, or similar binding agreement in principle among, a sufficient number of the Debtors' Stakeholders to proceed with the implementation of a Restructuring, (ii) execution of definitive agreements with respect to a "pre-packaged" or "pre-arranged" plan of reorganization under the Bankruptcy Code or the Mexican Bankruptcy Code or other similar bankruptcy laws (a **"Prepackaged Plan"**) by a number of the Debtors' Stakeholders as is necessary to bind the Debtors' Stakeholders to the plan, and (iii) delivery of binding consents to, or execution of, a Prepackaged Plan by a number of the Debtors' Stakeholders as is necessary to file such Prepackaged Plan.

c.  A fee equal to $8 million (a **"Restructuring Fee"**), payable upon consummation of a Restructuring. Payment of any Initial Restructuring Fee shall be credited (without duplication) against any Restructuring Fee payable.

d.  (i) If, whether in connection with the consummation of a Restructuring, or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall be paid a fee (a **"Restructuring Sale Transaction Fee"**) upon consummation thereof equal to the greater of (A) 1.125% of the Aggregate Consideration as (defined in Schedule I of the Lazard Agreement) or (B) the Restructuring Fee. To the extent a Restructuring Sale Transaction Fee is earned, Lazard shall not also be entitled to an additional Restructuring Fee under Section (c) above.

(ii) Notwithstanding clause (i) above, if the Debtors sign a definitive agreement in respect of a Sale Transaction covered by clause (i) above with EchoStar Corporation prior to July 31, 2010 which at such time has been approved by the necessary Stakeholders, and if the Debtors subsequently consummate such Sale Transaction on the terms of such agreement, the Restructuring Sale Transaction Fee payable with respect thereto shall be equal to $5 million.

(iii) if, during the period commencing upon consummation of a Restructuring and ending one year from such date, the Debtors propose to effect any Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall have the right, but not the obligation, to act as sole financial advisor to the Debtors in connection therewith. Upon consummation of any such Sale Transaction in respect of which Lazard has agreed to act as the Debtors' financial advisor, the fee payable to Lazard (the **"Subsequent Sale Transaction Fee"**) would be equal to the greater of (A) 1.125% of the Aggregate Consideration calculated as set forth in Schedule I attached to the Engagement Letter and (B) $5

million. If Lazard agrees to so act in connection with such Sale Transaction, Lazard would provide customary M&A financial advisory services to the Debtors relating thereto, and the Debtors and Lazard would enter into any additional agreements which are customary for investment bankers of similar standing acting in similar situations. 25% of any Restructuring Fee paid shall be credited (without duplication) against any Subsequent Sale Transaction Fee payable.

e. If the Debtors propose to effect any Financing relating to Satmex's "Satmex 7" satellite (and assets and programs relating thereto) (a "**Satmex 7 Financing**"), the Debtors may retain Lazard, subject to Lazard's agreement to so act, as the Debtors' financial advisor in connection therewith, and in such event shall pay Lazard a fee (a "**Satmex 7 Financing Fee**") that shall be mutually agreed in good faith and that shall appropriately compensate Lazard in light of the magnitude and complexity of the transaction and the fees customarily paid to investment bankers of similar standing acting in similar situations.

f. Upon Lazard's (or LCM's) request, the Debtors will enter into an additional agreements with Lazard (or LCM) in respect of any Financing covered by the Lazard Agreement, which agreement shall include terms and conditions customary for investment bankers of similar standing acting in similar situations (but shall not include additional fees for financial advisory services). For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (c), (d), and (e) above.

g. In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees and expenses of counsel, if any, retained by Lazard. Such expenses shall be paid in accordance with policies mutually agreed by the Debtors and Lazard, subject to Court approval as detailed herein.

h. As part of the compensation payable to Lazard under the Lazard Agreement, the Debtors agree to the indemnification, contribution and related provisions (the "**Indemnification Letter**") attached to the Lazard Agreement as Addendum A and incorporated herein in their entirety, as such Indemnification Letter may be modified in this Application or by the Proposed Form of Order.

i. All amounts referenced under the Lazard Agreement reflect United States currency and shall be paid promptly in cash after such amounts accrue under the Lazard Agreement. All sums payable under the Lazard Agreement shall be paid free and clear of all deductions or withholdings unless the deduction or withholding is required by law, in which event the Debtors shall pay such

additional amount as shall be required to ensure that the net amount received by Lazard under the Lazard Agreement will equal the full amount which would have been received by Lazard had no such deduction or withholding been required to be made. All sums quoted are exclusive of any goods and services, Impuesto al Valor Agregado, value added or similar tax, and the Debtors will pay to Lazard any additional goods and services, value added or similar tax, if applicable, chargeable in respect of payments made to Lazard or otherwise chargeable in respect of this engagement. Notwithstanding the foregoing, the Debtors shall not be required to make any payments on account of US federal or state income tax payable by Lazard on the accounts received under the Lazard Agreement.

30. As noted above, the Debtors are seeking to retain ADR, by a separate application, for financial advisory/banking services in connection with the Latin American aspects of these proceedings. Prior to the commencement of these proceedings, ADR provided such services and was compensated pursuant to the Lazard Engagement Letter (i.e., there was no separate ADR engagement letter). As set forth in the Lazard Engagement Letter, ADR was authorized and did in fact provide such services to the Debtors and separately invoiced the Debtors for its services. Due to the commencement of these proceedings, however, the Debtors are filing a separate application to retain ADR. In connection therewith, the Debtors, Lazard and ADR have agreed that Lazard and ADR shall be compensated separately and independent from one another. Specifically, the Fee Structure set forth above and as described in the Lazard Engagement Letter shall be modified to provide that Lazard shall only be entitled to two-thirds of any of the fees payable under the Lazard Engagement Letter. ADR shall be entitled to one-third of any fees payable thereunder (provided the Court approves the retention and compensation of ADR). For the avoidance of doubt, the two-thirds payable to Lazard shall be independent from and not contingent or otherwise tied to the compensation that may be payable to ADR.

31. In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors will promptly reimburse Lazard for all reasonable expenses (including travel and lodging, data processing and communications charges, courier services and

other appropriate expenditures) and other reasonable fees and expenses, including expenses of counsel, if any, subject to the filing of fee applications as set forth herein. As part of the compensation payable to Lazard under the Engagement Letter, the Debtors have also agreed to the terms and conditions of the Indemnification Letter, as modified in this Application and/or the Proposed Order.

32.     The Fee Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances. Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Indeed, the Debtors and Lazard have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these cases and in light of the fact that (a) such commitment may foreclose other opportunities for Lazard and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

33.     Lazard will maintain records in support of any expenses incurred in connection with the rendering of its services in these cases. As Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule

2016-2, and the United States Trustee Fee Guidelines. Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

### Disinterestedness of Professional

34. To the best of the Debtors' knowledge and based upon the J. Blake O'Dowd Declaration, Lazard is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

35. To the best of the Debtors' knowledge and based upon the J. Blake O'Dowd Declaration, Lazard does not hold or represent an interest materially adverse to the estates with respect to the matter on which Lazard will be employed, in accordance with section 1103(b) of the Bankruptcy Code.

36. To the best of the Debtors' knowledge and based upon the J. Blake O'Dowd Declaration, Lazard's connections with the Debtors, creditors, any other party in interest, or their respective attorneys are disclosed at **Schedule 2** in the J. Blake O'Dowd Declaration.

37. Lazard has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these cases.

### No Duplication of Services

38. The Debtors intend for Lazard's services to complement, and not duplicate, the services to be rendered by any other professional retained in these cases. Lazard understands that the Debtors have retained and may retain additional professionals during the term of the

engagement and will work cooperatively, as requested by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Indemnification

39.     The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Lazard and the other Indemnified Persons (as defined in the Indemnification Agreement) in accordance with the provisions set forth in the Indemnification Letter as modified by the Order.  The Indemnification Agreement provides, among other things, that the Debtors will indemnify Lazard and other Indemnified Persons except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence.

40.     The indemnification, contribution and reimbursement provisions reflected in the Indemnification Letter are customary and reasonable terms of consideration for investment bankers such as Lazard for proceedings both out of court and in chapter 11.  The terms of the Indemnification Letter were fully negotiated between the Debtors and Lazard at arm's-length and the Debtors respectfully submit that the Indemnification Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

## Approval of Terms of Engagement Under Bankruptcy Code Section 328(a)

41.     The Debtors seek approval of the Lazard Agreement, including the Fee Structure contained therein pursuant to Bankruptcy Code sections 327(a) and 328(a).  Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage

fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the compensation of professionals, including investment bankers and financial advisors, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

42.     As set forth above, notwithstanding approval of the Lazard Agreement under Bankruptcy Code section 328(a), Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

43.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Lazard in these complex Chapter 11 Cases, Lazard's substantial experience with respect to investment banking services and the fee structures typically utilized by Lazard and other leading investment banks that do not bill their client on an hourly basis.  In agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Debtors acknowledge that it believes that each Advisor's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing any Restructuring, Sale Transaction or Financing and that the value to the Debtors of Lazard's services under the Lazard Agreement derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, the Restructuring Sale Transaction Fee, and the Subsequent Sale Transaction Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to

be provided under the Lazard Agreement, and that the deferred fees should not be considered to be "bonuses" or fee enhancements under applicable law.

44.     Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit and elsewhere. *See e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Meridian Auto. Sys. – Composites Operations, Inc.*, Case No. 05-11168 (MFW) Bankr. D. Del. July 19, 2005) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard and subjecting compensation to same standard of review); *In re Trans World Airlines, Inc.*, Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild Inc., as financial advisors for debtors, under sections 327(a) and 328(a)); *In re Covad Comm. Group, Inc.*, Case No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Lazard with compensation subject to standard of review set forth in section 328(a)); *In re Harnischfeger Indus.*, Case No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); *In re TOUSA, Inc.*, Case No. 08-10928 (JKO) (Bankr. S.D. Fla. Mar. 26, 2008 and Apr. 14, 2008) (same); *In re Tower Auto., Inc.*, Case No. 05-10578 (ALG) (Bankr.

S.D.N.Y. June 15, 2005) (same); *In re Casual Male Corp.*, Case No. 01-41404 (REG) (Bankr. S.D.N.Y. March 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to 11 U.S.C. § 328(a) standard of review).

45.     Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district and elsewhere. *See, e.g., In re Stant Parent Corp.*, Case No. 09-12647 (BLS) (Bankr. D. Del. Aug. 28, 2009) (authorizing indemnification of Mesirow Financial Consulting, LLC by debtors); *In re Tropicana Entertainment, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by debtors); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) Bankr. D. Del. Oct. 17, 2005); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); *In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); *In re Worldcom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. January 14, 2003); *In re Adelphia Commc'n Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. September 27, 2002).

46.     In light of the foregoing and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, and indeed, already addressed while negotiating and assisting in structuring the complex transactions that are the basis of this prepackaged plan over the course of approximately the last nine months, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Lazard's services for engagement of this nature, the Debtors believe that the

terms and conditions of the Lazard Agreement are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

47. Further, as noted above, as this is a prepackaged bankruptcy proceeding, Lazard has already expended significant time, effort and resources in preparing the cases, assisting in structuring the transactions that are the basis of the prepackaged plan, and negotiating the complex financial terms and related documents with multiple parties in interest. Since June, 2010, Lazard has advised the Debtors and has developed significant relevant experience and expertise regarding the Debtors and their current situation, and is thus well qualified and uniquely suited to deal effectively and efficiently with any financial problems that may arise during the pendency of these cases.

48. To deny the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking and financial advisors and would affect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of approximately the last nine months and which will continue through the pendency of these cases. In addition, due to the rapid nature of these cases, finding and retaining a new investment banker and financial advisor would be extremely burdensome on the Debtors, as other investment bankers and financial advisors would require additional time to review the details of the complex financial transactions embodied in the prepackaged plan. Further, it would require the commitment of significant resources for a newly retained investment banker to get up to speed given the steep learning curve involved. Moreover, comparable investment bankers would most likely charge similarly for their services.

**Notice**

49.     Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the First Priority Noteholders; (iv) counsel to the Second Priority Noteholders; (v) counsel to Jefferies Finance LLC; (vi) those parties requesting notice pursuant to Rule 2002; (vii) the Office of the United States Attorney General for the District of Delaware; (viii) the Internal Revenue Service; and (ix) the Securities and Exchange Commission.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given

**No Prior Request**

50.     No prior request for the relief sought in this Application has been made to this or any other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (i) granting this Application, (ii) authorizing the Debtors to retain and employ Lazard as their financial advisor and investment banker *nunc pro tunc* to Petition Date to perform the services set forth in the Lazard Agreement, and (iii) granting such other and further relief as is just and proper.

Dated: April 6th, 2011

SATÉLITES MEXICANOS, S.A. DE C.V, *et al.*, Debtors and Debtors-in-Possession

Patricio Northland
Chief Executive Officer