# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SATÉLITES MEXICANOS, S.A. DE C.V. *et al.*,[1] | Case Nos. 11-[_____] (___) |
| Debtors. | (Joint Administration Requested) |

## APPLICATION FOR ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS FINANCIAL ADVISORS TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE AND (II) LIMITED WAIVER OF LOCAL RULE 2016-2

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submit this application (the "**Application**") for entry of an order: (I) authorizing the retention and employment of Ernst & Young LLP ("**E&Y LLP**") as financial advisors to the Debtors, *nunc pro tunc* to the Petition Date (as defined below), in connection with the above-captioned Chapter 11 Cases pursuant to Section 328(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"); (II) providing a limited waiver of Local Rule 2016-2(g); and providing any additional relief required in order to effectuate the foregoing. In support of this Application, the Debtors submit the affidavit of Florence V. Lentini, a Principal at E&Y LLP (the "**Lentini Affidavit**"), attached hereto as **Exhibit "A"** and incorporated by reference herein. In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Satélites Mexicanos, S.A. de C.V. (0653) ("**Satmex**"); Alterna'TV Corporation (2940); and Alterna'TV International Corporation (4784).

## Status of the Case and Jurisdiction

1. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief sought herein are Section 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rules 2014-1 and 2016-2.

## Background

5. The Debtors are significant providers of fixed satellite services ("**FSS**") in the Americas, with coverage to more than 90% of the population of the Americas, including more than 45 nations and territories. As one of only two privately-managed FSS providers based in Latin America, the Debtors have designed, procured, launched, and operated three generations of satellites during a period of more than 25 years. Their current fleet is comprised of three satellites in highly attractive, contiguous orbital slots, which enables the Debtors' customers to effectively serve the entire coverage footprint utilizing a single satellite connection. The Debtors also provide Latin American television programming to the United States. The Debtors' industry is highly regulated and the Debtors' are dependent upon certain telecommunication concessions from the Mexican government.

6. As of the Petition Date, the Debtors' outstanding secured indebtedness consisted

NY 241,074,786 1

-2-

of approximately $238.2 million in aggregate outstanding principal amount of First Priority Notes[2] and $201.9 million in aggregate outstanding principal amount of Second Priority Notes, each issued by Satmex. Each of the First Priority Notes and the Second Priority Notes are guaranteed by substantially all of the assets of Alterna'TV and Alterna'TV International (and certain non-debtor affiliates), and secured by a lien on substantially all of the assets of the Debtors. The relative rights of the holders of First Priority Notes and holders of Second Priority Notes are governed by the Intercreditor Agreement dated as of November 30, 2006. The Debtors also have certain unsecured debt on which they are generally current as of the Petition Date.

7. In 2010 and 2011, the Debtors negotiated a prepackaged plan of reorganization that involves raising approximately $325 million of new financing through a high-yield secured debt issuance and $96.25 million of new equity investment through a Rights Offering for direct and indirect equity in Reorganized Satmex. The Debtors successfully obtained prepetition commitments for both sources of funding, subject to certain conditions. The funds raised from the debt and equity issuances will be used to retire the First Priority Notes, fund the completion of replacement satellite(s), and provide working capital for the reorganized Debtors. In full satisfaction of their claims, the holders of Second Priority Notes will receive direct or indirect equity in Reorganized Satmex, and the option to participate in the Rights Offering. As an alternative, the holders of Second Priority Notes may elect to receive cash only under a liquidity option, where the holder will receive 38 percent of the principal amount of its Second Priority Note Claim (including PIK interest payments accrued by the earlier of the Effective Date or May 31, 2011). The Debtors anticipate paying all other claims in the ordinary course.

---

[2] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the *Declaration of Patricio E. Northland in Support of Debtors' Chapter 11 Petitions and Request for First Day Relief*, which is being filed contemporaneously with this Motion (the "**Northland Declaration**"). Please see the Plan and Disclosure Statement for more details regarding the Plan and the transactions contemplated therein.

8. Satmex currently has two classes and three series of common stock, all of which is currently held by two Mexican trusts (collectively, the **"Trusts"**). The trust structure is not uncommon in Mexico and generally allows for foreign investors to invest in Mexican businesses and still meet Mexico's restrictions on foreign investment. Alterna'TV and Alterna'TV International are both wholly-owned subsidiaries of Satmex.

9. In order to effectuate the transactions under the Plan, Holdsat Mexico S.A.P.I. de C.V. (**"Mexico Holdings"**) and Satmex International B.V. (**"Satmex B.V."**), a wholly-owned subsidiary of Satmex Investment Holdings GP Ltd. and Satmex Investment Holdings L.P. (collectively, **"Investment Holdings"**), will purchase 100% of the current equity in Satmex for a purchase price of up to $6.25 million (subject to the satisfaction of certain conditions), pursuant to the Share Purchase Agreement dated December 22, 2010 (as amended, the **"Share Purchase Agreement"**). The beneficial owners of the purchasers under the Share Purchase Agreement are certain holders of Second Priority Notes. The purchase price for the equity will be funded in part by the proceeds of the Rights Offering, and the share purchase transaction will close before the Plan goes effective. Alterna'TV and Alterna'TV International will both remain wholly-owned subsidiaries of Satmex after confirmation of the Plan.

10. Holders of Second Priority Notes representing more than 66-2/3% of the outstanding principal amount of Second Priority Notes entered into a Restructuring Support Agreement with the Debtors on December 22, 2010 (the **"SPN Restructuring Support Agreement"**). Holders of First Priority Notes representing more than 66-2/3% of the outstanding principal amount of First Priority Notes entered into a Restructuring Support Agreement with the Debtors on March 23, 2011 (the **"FPN Restructuring Support Agreement,"** together with the SPN Restructuring Support Agreement, the "**Restructuring**

**Support Agreements**"). Also, on January 13, 2011, certain beneficial holders of units representing in the aggregate a majority of the trust interests in one of the Trusts (collectively, the "**Supporting Unitholders**") entered into agreements (collectively, the "**Unitholder Support Letters**") undertaking to support the transactions described in the SPN Restructuring Support Agreement.

11. On March 8, 2011, the Debtors served the Disclosure Statement and solicited votes from the First Priority Noteholders and Second Priority Noteholders. On March 25, 2011, the Debtors served the Supplement to the Disclosure Statement to announce their entry into the FPN Restructuring Support Agreement. The Chapter 11 Cases are required to implement the restructuring because the Second Priority Noteholders are impaired under the Plan. The Debtors believe that the Plan provides First Priority Noteholders with all amounts due to them under the First Priority Indenture. The Debtors have elected to treat First Priority Noteholders as an unimpaired class that is conclusively presumed to have accepted the Plan. However, in order to facilitate the confirmation and consummation of the Plan and to avoid any doubt that the proposed treatment leaves the First Priority Noteholders unimpaired or is otherwise acceptable to them, the Debtors are soliciting votes from the First Priority Noteholders. The Debtors believe that the Plan, which has been negotiated with representatives of the First Priority Noteholders, Second Priority Noteholders, the Series B Directors of Satmex, and certain equity holders of Satmex is the best mechanism for ensuring a successful restructuring of their current debts and providing them with the liquidity to succeed in the long-term.

12. Both the First Priority Noteholder and Second Priority Noteholder classes have voted to accept the Plan under the standards of 11 U.S.C. § 1126. The Debtors have requested that the Court confirm their "prepackaged" Plan approximately one month from the Petition

Date.

13. A more detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is fully set forth in the Northland Declaration, filed contemporaneously herewith and incorporated herein by reference.

## Relief Requested

14. By this Application, the Debtors seek authorization to retain and employ E&Y LLP as their financial advisors, pursuant to Section 328(a) of the Bankruptcy Code and pursuant to the terms and conditions set forth in the engagement letter dated January 10, 2011 and the related Statement of Work for financial advisory services (the "**Financial Advisory SOW**," and together with the engagement letter, the "**Engagement Letter**"), copies of which are attached to the Lentini Affidavit as **Exhibit "A"** thereto.[3]

## Scope of Services

15. As set forth in further detail in the Engagement Letter, E&Y LLP has agreed to provide certain financial advisory services (the "**Services**") during these Cases, subject to approval of the Court of the Application and the terms and conditions of the Engagement Letter. Subject to the detailed description in the Engagement Letter, the Services are described below:[4]

- Assisting management and counsel with respect to pre-bankruptcy planning and post-bankruptcy implementation, including but not limited to:

  - Assisting with the preparation of first day motions at the direction of Greenberg Traurig, LLP, the Debtors' proposed counsel;

---

[3] Capitalized terms not defined in this Application shall have the meanings ascribed to them in the Engagement Letter.

[4] The summary of the Engagement Letter contained in this Application is solely for the convenience of the Court and parties in interest. To the extent that the summary contained herein and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

- Developing communication plans for various constituents;

- Assisting management and Debtors' counsel with respect to bankruptcy implementation, including but not limited to the preparation of the information required in the Schedule of Financial Affairs and the Statements of Assets and Liabilities and the development of process for production of monthly operating reports;

- Interfacing with Epiq Bankruptcy Solutions, LLC and coordinating the above activities;

- Designing an preparing a 13-week liquidity management/cash flow template/tool that incorporates detailed sources and uses of cash;

- Assisting with the preparation of actual to budget variance analysis as required by the cash collateral motion; and

- Assisting in the preparation of a liquidation analysis to produce an illustrative summary of potential recoveries under various scenarios.

### E&Y LLP's Qualifications

16. E&Y LLP is a global leader in providing advisory services in the areas of financial restructuring and bankruptcy reorganization to troubled companies. E&Y LLP offers a comprehensive range of reorganization services, including, but not limited to, generating liquidity forecasting tools and advising on cash management issues, developing a process for the production of monthly operating reports, designing and preparing a 13-week liquidity management/cash flow template/tool that incorporates detailed sources and uses of cash, assisting with bankruptcy preparation and reporting including the statements, schedules and monthly operating reports and advising on negotiations with key constituents. E&Y LLP's professionals have assisted and advised, and provided strategic advice to, debtors, creditors, bondholders, investors and other entities in a number of Chapter 11 cases.

17. The Debtors wish to retain E&Y LLP to render its professional services for the

benefit of their estates pursuant to the terms of the Engagement Letter, which was negotiated at arms' length between the Debtors and E&Y LLP and reflects the Debtors' evaluation of the work to be performed by E&Y LLP.

18. Moreover, the Debtors request approval of the employment of E&Y LLP *nunc pro tunc* to the Petition Date. Such relief is warranted by the circumstances presented by these Chapter 11 Cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity, compressed timing and intense activity relating to the solicitation, preparation and filing of these Cases necessitated that the Debtors, E&Y LLP, as well as the Debtors' other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of the Debtors to comply with the pending submission and approval of this Application. Indeed, with the filing of these Chapter 11 Cases, E&Y LLP will immediately have to turn its attention to urgent matters including, but not limited to, cash collateral issues, reporting requirements and other business and financial related issues that are expected to arise as a result of these Chapter 11 filings. If the Debtors were unable to immediately continue to engage the services of E&Y LLP, they would lose valuable time in educating another financial advisory firm that is not familiar with the Debtors' operations and financial issues. Any such transition would disadvantage the Debtors and all parties in interest.

19. For the reasons stated above, the Debtors believe that E&Y LLP is both well qualified and uniquely able to assist the Debtors in these Chapter 11 Cases in an efficient and timely manner. Accordingly, the Debtors submit that the proposed retention of E&Y LLP as their financial advisors is in the best interests of the Debtors' estates, their creditors and other

NY 241,074,786 1

- 8 -

parties in interest.

### **Professional Compensation**

20. E&Y LLP's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its agreed terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with the billing terms set forth in the Engagement Letter.

21. The Debtors further understand that E&Y LLP intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and consistent with the proposed compensation set forth in the Engagement Letter (collectively, the "**Fee Structure**"). The Debtors seek to retain E&Y LLP pursuant to Section 328(a) of the Bankruptcy Code, with E&Y LLP's charges for the Services reviewable only pursuant to the standard of review set forth in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review.

22. In summary, the Fee Structure provides E&Y LLP with compensation at agreed hourly rates as follows by level of professional:

| **Level** | **Rate** |
|---|---|
| Partner / Principal | $650-$700 |
| Senior Manager | $500-$550 |
| Manager | $375-$400 |
| Senior / Staff | $200-$325 |

23. Because E&Y LLP's hourly rates are revised periodically in the ordinary course of E&Y LLP's business, E&Y LLP will advise the Debtors of new rates once they are established if a rate change is effective during the course of this engagement.

24. In addition to the fees set forth above, the Debtors and E&Y LLP have agreed that

the Debtors shall reimburse E&Y LLP for any direct expenses incurred in connection with E&Y LLP's retention in these Chapter 11 Cases and the performance of the Services. E&Y LLP's direct expenses shall include reasonable and customary out-of-pocket expenses for items such as travel (airfare and ground transportation), hotel, meals, accommodations, telephone, facsimile, overnight mail, messenger services and other expenses. In addition, the Debtors shall reimburse E&Y LLP at its standard billing rates for its professional time and expenses, as well as reasonable attorneys' fees and expenses incurred if the Debtors request E&Y LLP, or if E&Y LLP is required by government regulation, subpoena or other legal process, to produce documents or personnel as witnesses with respect to the Services or the Engagement Letter, provided E&Y LLP is not a party to the proceeding in which the information is sought.

25. Under the circumstances of these Chapter 11 Cases, and pursuant to Local Rule 2016-2(g), the Debtors request that the Local Rules of this Court be modified, to the extent necessary, so as to allow E&Y LLP personnel to bill the Debtors in half-hour increments and to only maintain receipts for expenses in amounts greater than $75.00.

26. The overall compensation structure described above is comparable to compensation generally charged by financial advisory firms of similar stature to E&Y LLP for comparable engagements, both in and out of court.

### Indemnification Provision

27. The Debtors have agreed to indemnify and reimburse E&Y LLP and the E&Y LLP Persons (as defined in the Engagement Letter) in accordance with the provisions set forth in the Engagement Letter. The indemnification and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors such as E&Y LLP for proceedings both out of court and in Chapter 11. The terms of the

Engagement Letter, including the indemnification and reimbursement provisions, were fully negotiated between the Debtors and E&Y LLP at arm's-length and the Debtors respectfully submit that these provisions are reasonable and in the best interests of the Debtors, their estates, and creditors.

### No Duplication of Services

28. The Debtors intend for E&Y LLP's services to complement, and not duplicate, the services to be rendered by any other professional retained in these Chapter 11 Cases. E&Y LLP understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively, as requested and coordinated by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### E&Y LLP's Disinterestedness

29. To the best of the Debtors' knowledge based upon the Lentini Affidavit, and except as otherwise set forth therein, E&Y LLP (a) does not hold or represent any interest adverse to the Debtors or their estates, their creditors or any other party-in-interest in connection with these Chapter 11 Cases, (b) is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, and (c) has no material connection to the Debtors, their creditors or related parties except as may be disclosed in the Lentini Affidavit.

### Basis for Relief

30. Section 327(a) of the Bankruptcy Code permits the employment of professionals who "do not hold or represent an interest adverse to the estates, and that are disinterested persons." 11 U.S.C. § 327(a). As described above, E&Y LLP satisfies the disinterestedness standard of Section 327(a) of the Bankruptcy Code.

31. Section 328 of the Bankruptcy Code provides, in pertinent part, that under 11 U.S.C. § 328, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent basis." 11 U.S.C. § 328(a). As set forth above, E&Y LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules (subject to the partial waiver of Local Rule 2016-2 requested herein), and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter, under the standards of Section 328(a) of the Bankruptcy Code. The Debtors further believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by E&Y LLP in these complex Cases and E&Y LLP's substantial experience with respect to financial and bankruptcy advisory services.

32. Moreover, Rule 2014(a) of the Bankruptcy Rules requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

33. For the reasons described above, the Debtors submit that E&Y LLP is the best qualified firm to provide the financial advisory services sought by the Debtors. Accordingly, the Debtors submit that the immediate retention of E&Y LLP, *nunc pro tunc* to the Petition Date, is

in the best interest of the Debtors and their estates, their creditors and all other parties in interest.

## Notice

34. Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the *ad hoc* committee of First Priority Noteholders; (iv) counsel to the *ad hoc* committee of Second Priority Noteholders; (v) counsel to Jefferies Finance LLC; (vi) counsel for the First Priority Collateral Trustee; (vii) counsel for the First Priority Indenture Trustee; (viii) counsel for the Second Priority Collateral Trustee and Second Priority Indenture Trustee; (ix) counsel for the directors of Satmex appointed by the holders of Satmex's Class I Series B shares; (x) counsel to the Secretariat of Communications and Transport for the Government of Mexico; (xi) those parties requesting notice pursuant to Rule 2002; (xii) the Office of the United States Attorney General for the District of Delaware; (xiii) the Internal Revenue Service; and (xiv) the Securities and Exchange Commission. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

35. No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) enter an order, substantially in the form attached hereto, granting the relief requested herein and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: April 6th, 2011

Satélites Mexicanos, S.A. de C.V. *et al.*,
Debtors and Debtors-in-Possession

_____
LUIS FERNANDO STEIN VELASCO
Chief Financial Officer